UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x

E ELECTRICAL CONTRACTING, INC.,

                            **Plaintiff,**

                    **-against-**

SIEMENS INDUSTRY, INC., BUILDING
TECHNOLOGIES DIVISION,

                       **Defendant.**

**OPINION & ORDER**

**19-cv-223 (NG)(ST)**

---------------------------------------------------------- x
SIEMENS INDUSTRY, INC.,

                  **Third Party Plaintiff,**

                    **-against-**

SKANSKA USA BUILDING INC.,
SKANSKA USA CIVIL DIVISION
NORTHEAST INC., and WALSH
CONSTRUCTION COMPANY II, LLC,
individually and as Joint Venture of
SKANSKA WALSH DESIGN BUILD
JOINT VENTURE, and THE OHIO
CASUALTY INSURANCE COMPANY,

                  **Third-Party Defendants.**

---------------------------------------------------------- x

**GERSHON, United States District Judge:**

Third-party defendants Skanska USA Building Inc., Skanska USA Civil Northeast, Inc., Walsh Construction Company II, LLC, and Skanska Walsh Design Build Joint Venture (collectively "Skanska") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Second Amended Third-Party Complaint ("SATPC") filed by defendant/third-party plaintiff Siemens Industry, Inc., Building Technologies Division ("Siemens"). For the reasons that follow, the motion is granted in part and denied in part.

## I.	Allegations of the Second Amended Third-Party Complaint

The following facts are taken from the SATPC and are accepted as true for the purposes of this motion.

This action arises out of a construction project commonly referred as the LaGuardia Airport Central Terminal Building Replacement (the "Project"). Skanska, the general contractor for the Project, entered into an agreement with Siemens, a subcontractor, dated May 23, 2017 (the "Contract").[1] Siemens agreed to design and install a fire alarm system for the Site Wide Central Terminal Building, consisting of the Central Heat and Refrigerant Plant, Final Cooling Tower, Concourse B, Concourse A, Concourse B Pedestrian Bridge, Concourse A Pedestrian Bridge, West Parking Garage Connector, Headhouse, and Central Hall. Skanska established the schedule for Siemens's work. According to the Contract, in the event that Skanska issues an acceleration directive to Siemens concerning the performance of the work and that directive is due "to the fault of [Skanska], [Siemens] shall be entitled to an equitable adjustment of the [Contract] Amount or an extension of time as reasonably determined by [Skanska]." SATPC at ¶¶ 16, 19.

On August 2, 2017, Siemens entered into a subcontract (the "Subcontract") with plaintiff E Electrical Contracting, Inc. ("EEC") for the installation of certain fire alarm system work. Unlike the Contract, which is a Design-Bid-Build contract wherein Siemens was hired to design and install a site-wide Fire Alarm System, the Subcontract is a Bid-Build contract wherein EEC

_____

[1] There are two contracts at issue in this case—the contract between Skanska and Siemens and the contract between Siemens and plaintiff EEC. The parties occasionally refer to the contract between Skanska and Siemens as a "Subcontract" or the "Prime Subcontract." However, it is referred to in the original complaint and in Siemens's Third-Party Amended Complaint as the "Contract," and is more clearly understood as the Contract in the context of this motion, in contrast to the subcontract that exists between Siemens and EEC. I will therefore refer to the contract between Skanska and Siemens as the Contract and the contract between Siemens and EEC as the Subcontract.

was hired to build and install the work that Siemens designed.  The Subcontract incorporates the entire Contract "as an integral part of the Subcontract."  *Id.* at ¶ 20.  The reverse, however, is not true, as the Contract does not incorporate the Subcontract.  Subject to due performance, the Contract is a lump sum agreement in the amount of $18,730,315, while the value of the Subcontract is $14,435,000.  An Amendment to the Subcontract provides that EEC's invoices will be paid by Siemens only on a "pay-when-paid basis, within seven (7) days of [Siemens's] receipt of payment from [Skanska] for [EEC's] Work."  *Id.* at ¶ 25.  Additionally, according to the SATPC, when Skanska directs changes to the project schedule that cause EEC to incur additional costs, EEC is entitled to compensation only to the extent that Skanska pays Siemens for those costs.

According to the Contract, Siemens's work on Concourse B was slated to begin on July 31, 2017 and to be completed by July 1, 2018.  Both Siemens and EEC allege that work on Concourse B did not, in fact, begin until months after it was scheduled to start.  The SATPC alleges that, because of delays by Skanska, the start of work on Concourse B and Headhouse was delayed but without concomitant extensions of contractual deadlines, causing a compressed schedule.  According to Siemens, it incurred additional costs as a result of these delays. Siemens therefore submitted a claim to Skanska for additional compensation on February 12, 2019. Skanska, however, refused to pay the claim or discharge any time-related damages.

On March 27, 2019, Skanska directed Siemens to add a second shift of twenty workers by April 1, 2019 for the Headhouse project.  Siemens communicated this directive to EEC on March 28, 2019, but EEC refused to provide the additional labor.  Siemens then "placed EEC in default and partially terminated its scope of work."  *Id.* at ¶ 60.  Siemens hired a second electrical

subcontractor, B&G Electrical Contractors of N.Y., Inc. ("B&G"), to replace EEC, at a substantial cost to Siemens.

## II.     Procedural History

EEC filed an initial complaint against Siemens on January 11, 2019, alleging damages arising from work on Concourse B and Headhouse.  Its claims are based on the allegation that Siemens imposed its design obligations on EEC, even though EEC was hired not to design, but only to build and install the Fire Alarm System.  On May 31, 2019, Siemens filed a third-party complaint against Skanska and the Ohio Casualty Insurance Company, the surety on the performance bond that EEC procured in accordance with its obligations under the Subcontract. Siemens thereafter sought a pre-motion conference for an anticipated motion to dismiss EEC's initial complaint, while Skanska sought a pre-motion conference on its anticipated motion to dismiss Siemens's third-party complaint.  Following a conference on September 12, 2019, at which both proposed motions were discussed, Siemens filed its first amended third-party complaint on October 25, 2019, and EEC filed an amended complaint on November 15, 2019 ("Amended Complaint").  Siemens amended its third-party complaint a second time, filing the SATPC on December 6, 2019.

EEC's Amended Complaint seeks "a declaration of rights and responsibilities of the parties under the Subcontract, including, but not limited to, a declaration that (A) there has been a cardinal change to the Subcontract, (B) EEC is not required to perform any further work under the Subcontract, (C) that EEC's refusal to perform such work is not a breach of the Subcontract and (D) EEC is entitled to recover . . . its costs and damages incurred in performing the work thus far required by Siemens to be performed as a consequence of Siemens' cardinal changes."

Am. Compl. at ¶ 41.  Additionally, EEC seeks damages for breach of contract, account stated, and quantum meruit.

In the SATPC, Siemens brings claims against Skanska for breach of contract, contractual indemnity, declaratory judgment, common-law indemnification, equitable contribution, quantum meruit, and account stated.  Skanska now moves to dismiss the SATPC.

While this motion was pending, Skanska sought to make a motion for summary judgment based on what it argued was undisputed documentary evidence demonstrating that Siemens has been paid in full for the claims and damages sought in this action.  Skanska also sought a stay of its ongoing discovery obligations pending resolution of that motion.  At the pre-motion conference for the proposed summary judgment motion, I denied Skanska's request to stay discovery and ordered that the parties make any summary judgment motions following the close of discovery.

III.    **Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007).  To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see Twombly*, 550 U.S. at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  When reviewing a motion to dismiss, the court accepts as true all well-pleaded facts in the pleading and draws all reasonable inferences in favor

of the non-moving party. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

## IV.     Discussion

### A.  Breach of Contract Claims

Count One of the SAPTC is titled "Breach of Contract" and encompasses two separate claims: an actual breach of contract claim seeking damages for work that Siemens has already performed, and an anticipatory breach of contract claim seeking damages for any future productivity claims by Siemens.  Count Two of the SATPC, on the other hand, is titled "Contractual Indemnity" and alleges a breach of the Contract's requirement that Skanska indemnify, defend and hold harmless Siemens against EEC's claims allegedly caused by Skanska's actions and inaction.

As to the actual breach, Siemens alleges that Skanska materially breached the Contract by failing to pay Siemens's February 12, 2019 claim for the already incurred damages related to the completion of Concourse B and Headhouse under a compressed schedule, and for the discharge of time-related damages, including liquidated damages.  Siemens specifies that the damages it seeks for this breach do not encompass those sought by EEC in its "productivity and related claims for Concourse B and Headhouse that are the subject of [EEC's] Amended Complaint." SATPC at ¶ 37.  Siemens's anticipatory breach of contract claim in Count One is based on Skanska's alleged refusal to pay any further productivity claims on the Project while this litigation is pending, which Siemens argues violates Skanska's contractual obligation to equitably adjust Siemens's productivity claims.

Siemens's Count Two asserts breach of contract based on Skanska's alleged failure to comply with its contractual obligation "to indemnify, defend and hold harmless [Siemens]

against any 'Claims' or 'Damages' involving 'any willful misconduct, negligence, gross negligence, actual fraud or other culpable act, error or omission of [Skanska] or its directors, officers, employees, agents or representatives in connection with the Work, the Project or the Project Site." *Id.* at ¶ 61.

### i. The Contractual Indemnity Claim in Count Two Is Not Duplicative of the Breach of Contract Claim in Count One

Skanska seeks dismissal of the contractual indemnity claim (Count Two) based on the argument that it is duplicative of the breach of contract claim (Count One). Insofar as Skanska attempts to treat the contractual indemnity claim as a tort claim and argue that it is duplicative, the argument fails because it is, in fact, a contract claim. To the extent that Skanska argues that the claims are duplicative because the potential recovery is identical, Count One seeks damages under the impact claim provisions of the Contract (§§ 10.5–10.6)[2] for work that Siemens has performed or will perform, whereas Count Two seeks damages under the indemnity provision of the Contract (§18.1) for work that EEC performed.[3] Additionally, the contractual indemnity claim seeks to recover attorney's fees, which Siemens admits are not recoverable under the breach of contract claims in Count One. Obviously, if successful on both Counts for the same damages, Siemens will not be able to recover twice. But there is no reason why Siemens cannot sue under two different contractual provisions.

---

[2] Change orders, which are the method by which Siemens is able to obtain compensation for changes to the scope of work, are addressed in Sections 10.1 through 10.3. Impact claims, which are addressed in Sections 10.5 through 10.6, deal with claims for additional compensation and extensions of time due to acceleration, disruption or inefficiency or other adverse impacts.

[3] Skanska argues for the first time on reply that the contractual indemnity provision should be analyzed as a liquidated impact claim under §§ 10.5–10.6, as opposed to a contractual indemnity claim under § 18.1. "[A]rguments raised for the first time in a reply memorandum are waived and need not be considered." *Tutor Time Learning Ctrs., LLC v. GKO Grp., Inc.*, 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2013); *see also, e.g.*, *Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010).

### ii. There Are Questions of Fact Regarding Skanska's Condition Precedent Argument

Sections 10.5 and 10.6 of the Contract require Siemens to submit impact claims for additional compensation and/or requests for extensions of time to Skanska within two business days of the event that gave rise to the need for additional compensation and/or time. Skanska argues that Counts One and Two should be dismissed based on what it argues is Siemens's failure to comply with the Contract's notice of claim provisions.

Specifically, Section 10.5 provides that if Siemens "fails to submit a claim to [Skanska] as required and as a consequence [Skanska] is prejudiced in its ability to present such claim under the Design-Build Contract, then [Siemens's] entitlement to a [Contract] adjustment relating to such claim shall be equally prejudiced." Section 10.6 further states that "[Siemens's] timely compliance with the notice requirements in Section 10.5 shall be a condition precedent to [Siemens's] entitlement to a [Contract] adjustment and [Siemens] waives and releases any claim for additional compensation or an extension of time in the event that [Siemens] does not so comply."

Skanska contends that the basis for Siemens's impact claim was the late turnover of Concourse B in 2017, and, because Siemens's impact claim dated February 12, 2019 was filed over a year after that alleged delay, the notice of claim was untimely, precluding this action in accordance with Section 10.6. Further, in response to Siemens's argument that the prejudice requirement of Section 10.5 applies to the claims at issue here, Skanska counters that, according to the Contract, late notice is inherently prejudicial and thus need not be proven by Skanska. Specifically, Skanska relies on Section 10.6, which it argues makes the two-business day rule an absolute and unambiguous condition precedent to all claims. Skanska further argues, without

citation or support, that, even if it were required to prove prejudice, Siemens's failure to give the appropriate notice was prejudicial as a matter of contract interpretation.

However, Skanska has not established as a matter of law that the contractual language it relies on unambiguously supports its position. Nor has Skanska established the absence of factual issues regarding whether Siemens has met the contractual requirements for a notice of claim. These issues will benefit from discovery and it would be improper for me to reach a decision on them at this stage in the litigation.

The motion to dismiss Counts One and Two based on Siemens's alleged failure to comply with conditions precedent is denied.

### iii. Siemens Has Pleaded Performance for Actual Breach of Contract, But Has Not Properly Pleaded an Anticipatory Breach

Skanska argues that Siemens's breach of contract claims cannot survive a motion to dismiss because Siemens has failed to plead that it performed its own obligations under the Contract. A plaintiff asserting a breach of contract claim in New York must allege (1) the existence of a contract; (2) adequate performance of the contract by the plaintiff; (3) breach by the other party; and (4) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357–58 (S.D.N.Y. 2001).

Skanska argues that Siemens cannot allege that it adequately performed the Contract because the SATPC states only that Siemens completed work on Concourse B and Headhouse, which is only one stage of a complex, multi-phase Project. With regard to its actual breach of contract claim, Siemens asserts that it was sufficient to allege that it completed Concourse B and Headhouse because it is not suing for breach of the entire Contract, but rather for a partial breach. Siemens relies on Section 1.04(10) of the Contract, which states that "[s]ubstantial

completion ca[n] be obtained at each phase" of the Project.  Drawing all reasonable inferences in favor of the non-moving party, I agree with Siemens that the SATPC sufficiently pleads the elements of an actual, albeit partial, breach of contract claim based on Siemens's allegation that it completed the Concourse B and Headhouse phases of the Project.

With regard to its anticipatory breach claim, Siemens asserts that there is no requirement to plead performance.  This is correct.  However, the non-breaching party to an anticipatory breach must

> choose between two options.  It could either (1) treat the termination as an anticipatory breach, consider the agreement at an end and seek damages, or (2) ignore the anticipatory breach, continue to perform the agreement, wait to see if the [repudiating party] would perform when required by the terms of the agreement and, if it did not do so, then bring suit on the subsequent breach.

*Strasbourger v. Leerburger*, 233 N.Y. 55, 59 (N.Y. 1922).  Here, Siemens has not done either.  It has rejected the first option by continuing to perform under the Contract.  And it has rejected the second option by initiating litigation against Skanska now.  In sum, Siemens has not met the conditions required of an anticipatory breach claim.  Accordingly, I dismiss Siemens's anticipatory breach claim without prejudice.

### iv.  Whether Siemens Timely Presented A Shop Drawing to Skanska for Approval Is Not Appropriate for Consideration on a Rule 12 Motion

I reject Skanska's argument that Siemens is unable to allege substantial performance under Counts One and Two because Siemens "failed to submit acceptable shop drawings before its work began[,]" as was required by the Contract.  Mem. of Law at 7.  Skanska asks me to rely on a shop drawing dated December 1, 2017 that it attaches to the motion as proof that Siemens did not timely submit the shop drawing by June 24, 2017, as was required by the Contract.  If I were to consider the shop drawing and accept the related factual premises as true, Skanska argues, Siemens did not timely fulfill its own obligations, which breached the Contract and left

Siemens without the contractual right to proceed with its work during the period of the delay that Siemens blames on Skanska.

Although a court's review is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Chambers v. Time Warner, Inc..*, 282 F.3d 147, 152–53 (2d Cir. 2002). A document is integral to the complaint if the complaint "relies heavily upon its terms and effect." *Id.* at 153 (internal quotations omitted). Skanska argues that my consideration of this document is appropriate because "EEC relied on those drawings in its pleadings, which Siemens rely [sic] on to form the basis of the SATPC." Reply at 4. I am not persuaded that the shop drawing is integral to or incorporated by reference in Siemens's pleading. It is therefore not properly considered on a motion to dismiss. Moreover, there is nothing in the four corners of the document that suggests that the SATPC must be dismissed. The document, without context provided by discovery—such as witness testimony— simply does not prove that Siemens failed to timely comply with its contractual obligations on the Project.

In sum, I deny Siemens's motion to dismiss as it relates to Skanska's claims for an actual breach of contract under Count One and for breach of contractual indemnity under Count Two. Skanska's claim for an anticipatory breach of contract under Count One, however, is dismissed without prejudice.

### B. Count Three, Which Seeks a Declaratory Judgment, Fails to State a Claim for Relief, and Counts Four, Five, and Six, Which Are Dependent Upon the Success of Count Three, Also Fail

In its Amended Complaint, EEC alleges that Siemens effected a cardinal change to the Subcontract by demanding that EEC complete work on the Project that is outside of the scope of work that is reflected in the Subcontract. EEC seeks a declaratory judgment recognizing this

cardinal change, relieving it of its obligations under the Subcontract, and entitling it to costs and damages incurred from performing the work thus far.

Siemens's third claim in the SATPC responds to EEC's declaratory judgment claim. It seeks its own judgment declaring that, if the Subcontract is found void: (1) the Contract is deemed void; (2) Siemens is excused from further performance under the Contract; (3) Siemens is entitled to payment for its work under the Contract; (4) Skanska must indemnify Siemens for EEC's delay damages; and (5) Skanska must equitably contribute to EEC's damages. Additionally, Siemens seeks a declaration that Skanska is obligated to compensate Siemens for the damages and costs Siemens incurred by hiring B&G when Siemens terminated EEC's Subcontract.

The logic supporting Siemens's claim, however, is not apparent. If I were to grant EEC's requested declaratory judgment and void the Subcontract between Siemens and EEC, it does not necessarily follow that the Contract between Siemens and Skanska must also be voided. Unlike EEC, which alleges that Siemens effected specific changes to the Subcontract that rendered the Subcontract unenforceable, Siemens argues only that, if the Court finds that Skanska's delays and mismanagement rendered the Subcontract void, the same delays and mismanagement would also render the Contract void. Siemens, however, fails to identify *why* this is true. It appears that Siemens's claim is premised, at least in part, on a misreading of EEC's Amended Complaint. Siemens states in its opposition that "EEC is suing to void the Subcontract based on [Skanska's] conduct on the Project," implying that EEC is suing Skanska. Opp. at 18. This, of course, is incorrect. Siemens fails to acknowledge that, whatever role Skanska played in the Project's delays or mismanagement, EEC sues Siemens based on the terms of the Subcontract, not Skanska based on the terms of the Contract.

In sum, Siemens has failed to plead facts that support the relief it seeks and, as a result, the declaratory judgment claim is dismissed. Counts Four, Five, and Six—indemnification, equitable contribution, and quantum meruit—which are premised on the viability of the declaratory judgment claim because they arise only if the Contract is voided, are also dismissed.

### C. The Account Stated Claim Is Dismissed

Count Seven in the SATPC is for account stated. Siemens alleges that, because Skanska failed to object to Siemens's payment requisitions and change orders within a reasonable period of time, "[t]here was an implied agreement that [Skanska] would pay those requisitions and change orders." SATPC ¶¶ 107–12. Even though Siemens premises Count Seven on the viability of the declaratory judgment claim as it does with Counts Four, Five, and Six, I will nonetheless address it separately, because a claim for account stated may be used to prove damages for the surviving breach of contract claims.

To state a claim for account stated, a party must allege "(1) an account was presented; (2) it was accepted as correct; and (3) [the] debtor promised to pay the amount stated." *Consol. Energy Design Inc. v. Princeton Club of N.Y.*, 590 F. App'x 115, 116 (2d Cir. 2015) (quotations and citations omitted). Under New York Law, a plaintiff must demonstrate an agreement between the parties to an account based upon prior transactions between them. *Eastman Kodak Co. v. W.H. Henken Industries, Inc.*, 2007 WL 1726472, at *3 (W.D.N.Y. June 14, 2007); *Chisholm–Ryder Co. v. Sommer & Sommer*, 70 A.D.2d 429, 431 (4th Dep't 1979). However, the second and third requirements of the claim may be implied "if a party receiving a statement of account keeps it without objecting to it within a reasonable time." *LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999) (citations omitted).

The SATPC alleges that, when Siemens presented a requisition or change order to Skanska, an agreement as to both liability and the amounts due should be implied from Skanska's alleged failure to object within a reasonable period of time. However, Siemens offers only conclusory allegations in support of this theory and does not offer a single fact from which such an implication can be drawn either as to liability or as to the amount owed. The SATPC fails to identify any facts supporting acceptance or promise to pay on the part of Skanska. Siemens does not even identify the amount allegedly agreed to, as Count Seven seeks recovery only of an "amount exceeding $2,400,000." SATPC at ¶ 112. Siemens's conclusory assertions are insufficient to rise to the level of plausibility required under *Iqbal* and *Twombly*. I therefore dismiss Count Seven for failing to state a claim upon which relief may be granted.[4]

## V. Conclusion

For the reasons stated above, Skanska's motion to dismiss Siemens's claims for anticipatory breach of contract, declaratory judgment, indemnification, equitable contribution, quantum meruit, and account stated are dismissed without prejudice. The motion is denied as to Siemens's claims for actual breach of contract and contractual indemnity.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

July 13, 2021
Brooklyn, New York

---

[4] Because the claim is dismissed on plausibility grounds, it is unnecessary for me to address Skanska's separate argument that Section 10.7 of the Contract bars an account stated claim because the Contract provides that no account can be created until Skanska issues a written contract amendment to the Contract price.